## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEREK T. WILSON,                        :
                                        :
            Plaintiff,                  :      Civil Action No.:      03-2313 (RMU)
                                        :
            v.                          :      Document No.:          75
                                        :
PRUDENTIAL FINANCIAL *et al.*,          :
                                        :
            Defendants.                 :

## MEMORANDUM OPINION

### DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the defendant's renewed motion for summary judgment. The plaintiff alleges that because defendant CARCO Group, Inc., a consumer reporting agency,[1] violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b), defendant Prudential Financial Services ("Prudential"), an insurance and real estate company, withdrew an offer of employment that it had extended to the plaintiff. The defendant moves for summary judgment, asserting that the plaintiff has failed to establish a genuine issue of material fact with respect to any of the elements of a FCRA claim. The court holds that the plaintiff has demonstrated that there is a genuine issue of material fact with respect to his allegation that the defendant violated the FCRA and, accordingly, denies the defendant's motion for summary judgment.

---

[1] The plaintiff brought the instant suit against Prudential Financial and CARCO Group, Inc., but the court granted Prudential's motion to dismiss on August 3, 2004. Order (Aug, 3, 2004) (denying CARCO's motion to dismiss and granting Prudential's motion to dismiss). Accordingly, the court will refer to defendant CARCO Group, Inc. as "the defendant" throughout this Memorandum Opinion.

## II.  BACKGROUND

### A.  Factual Background

Because the facts of this case have been summarized in previous decisions, the court will discuss only those facts that are relevant to the instant issue.  *See Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 83-88 (D.D.C. 2004); *Wilson v. Prudential Fin.*, 475 F. Supp. 2d 48, 48-52 (D.D.C. 2007).  The plaintiff alleges the following: Prudential extended him an employment offer, which the plaintiff accepted.  Compl. ¶¶ 2, 4.  On August 1, 2002, Prudential sent the plaintiff a letter confirming the plaintiff's acceptance of the employment offer but indicating that the offer was subject to the satisfactory completion of a background verification process.  *Id*. ¶¶ 6-7; Pl.'s Opp'n at 4.  The letter indicated a base annual salary of $45,000, eligibility to participate in Prudential's compensation and pension plans, and paid vacation days.  Compl. ¶ 3; Pl.'s Opp'n at 3.

Prudential had a preexisting Consulting Services Agreement with the defendant to perform background checks on prospective employees.  Compl. ¶¶ 1, 8.  As part of the agreement, the defendant provided Prudential with projected time frames for completion of the background reports.  Pl.'s Opp'n at 2.  The background report prepared in anticipation of the plaintiff's employment was expected to be completed within ten or eleven days of the request, i.e., on or before August 12, 2002.  Compl. ¶ 25; Pl.'s Opp'n at 4.  At some time prior to September 3, 2002, the plaintiff avers that Lois Hefferman, an employee of the defendant, and Kimberly Fontanetta, an employee of Prudential, made statements to the plaintiff suggesting that his background report contained information involving pending criminal charges in Oklahoma.  Compl. ¶¶ 17, 41; Pl.'s Opp'n at 4-6, 19-21.  On September 3, 2002, Prudential notified the

plaintiff that it was withdrawing its employment offer and subsequently sent him a copy of the background report, dated September 6, 2002.  Compl. ¶¶ 9, 12; Pl.'s Opp'n at 8.  Prudential indicated that it had withdrawn the offer because it had not received a complete and satisfactory background report and needed to fill the position quickly.  Compl. ¶¶ 10-11; Pl.'s Opp'n at 6. The defendant's background verification report included in the criminal history section the word "pending" in relation to an apparent criminal charge against the plaintiff in Oklahoma.  Compl. ¶ 14.

After receiving the letter from Prudential and the copy of the background report, the plaintiff contacted the Oklahoma State Court Network and the Oklahoma State Bureau of Investigation, both of which informed him that he did not have charges pending in Oklahoma. *Id.* ¶ 19.  The plaintiff subsequently ordered a background check directly from the Oklahoma State Bureau of Investigation, which indicated that other individuals named "Derek Wilson" or "Derrick Wilson," whose social security numbers and birth dates did not match the plaintiff's, had criminal charges pending against them in Oklahoma.  *Id.* ¶ 20.  On September 5, 2002, the plaintiff informed the defendant that his background was clear of any criminal charges.  *Id.* ¶ 21. On September 6, 2002, the defendant sent Prudential an amended background verification report indicating that the plaintiff did not have any past or pending criminal charges.  *Id.* ¶ 22.  On September 25, 2002, Prudential sent the plaintiff a letter stating that although it was aware that the plaintiff had cleared the background check, it could not offer him a position but would contact him "when a suitable position became available."  *Wilson*, 332 F. Supp. 2d at 86. Prudential never hired the plaintiff.

### B. Procedural Background

In 2002 the plaintiff filed a related suit in the Superior Court for the District of Columbia claiming breach of contract by Prudential and negligence and defamation by CARCO. *Wilson v. Prudential Fin.*, 218 F.R.D. 1, 2 (D.D.C. 2003). After the case was removed to federal court, this court dismissed the action without prejudice because the plaintiff failed to timely oppose the defendants' motions to dismiss. *Id.* at 4. In November 2003, the plaintiff filed the instant action in this court, reasserting the claims against Prudential and CARCO. *See generally* Compl. Both defendants filed motions to dismiss. *See* Def.'s Mot. to Dismiss (Nov. 17, 2003); Prudential's Mot. to Dismiss (Nov. 20, 2003). The court granted Prudential's motion to dismiss and denied CARCO's motion to dismiss but directed the plaintiff to perfect service. *See generally* Mem. Op. (Aug. 3, 2004). After the plaintiff perfected service, the defendant again moved to dismiss for failure to state a claim or alternatively for summary judgment. Def.'s Mot. (Aug. 8, 2004). In October 2004, the court granted in part and denied in part the defendant's motion, dismissing the plaintiff's defamation claim while upholding the negligence action under the FCRA. *Wilson v. Prudential Fin.*, 2004 WL 2451412, at *3-6 (D.D.C. Oct. 18, 2004).

The defendant moved for summary judgment in September 2006, which the plaintiff opposed. Def.'s Mot. (Sept. 29, 2006). In March 2007, the court granted the defendant's motion, dismissing the negligence claims on the grounds that the plaintiff failed to present expert testimony necessary to establish a prima facie case of negligence under the FCRA. *Wilson*, 475 F. Supp. 2d at 42. The Circuit reversed and remanded, stating that a plaintiff filing suit under the FCRA need not always present expert testimony on the question of whether the defendant's procedures were reasonable. *Wilson v. CARCO Group, Inc.*, 518 F.3d 40, 42-43 (D.C. Cir.

4

2008).  The Circuit further noted that the plaintiff is still required to present some evidence from which a trier of fact could reasonably infer that the defendant failed to follow reasonable procedures.  *Id.*  Upon remand, the defendant again moved for summary judgment.  *See generally* Def.'s Mot.  In light of the Circuit decision, the court reviews the defendant's renewed motion for summary judgment and the plaintiff's opposition thereto.

## III.  ANALYSIS

### A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

## B.  Legal Standard Under the Fair Credit Reporting Act

Under the FCRA, consumer reporting agencies are required to follow "reasonable procedures" in preparing credit reports to "assure maximum possible accuracy" of the information.  15 U.S.C. § 1681e(b).  The FCRA addresses both reports that are inaccurate and those that are technically accurate but nonetheless misleading to potential readers.  *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984).  When consumer reporting agencies negligently fail to comply with the FCRA, private individuals may bring suit to recover their actual damages.  15 U.S.C. § 1681o.  To survive summary judgment, a plaintiff alleging a violation of the FCRA must present evidence from which a reasonable jury can infer that (1) the credit reporting agency reported inaccurate or misleading information; (2) the consumer reporting agency failed to use reasonable procedures to compile information with maximum

accuracy; (3) the plaintiff was actually injured; and (4) the consumer reporting agency's actions caused the plaintiff's injury.  *See* 15 U.S.C. §§ 1681e(b), 1681o; *Philbin v. Trans. Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996).

      In determining whether the consumer reporting agency utilized procedures that were reasonably prudent under the circumstances, the court must balance the potential that the information as provided may be misleading against the burden on the defendant to provide clarification when more accurate or complete information is available.  *Koropoulos*, 734 F.2d at 42; *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984) (per curiam).  A consumer reporting agency's duty to clarify inaccurate or incomplete information is at its apex when the potential harm to the plaintiff is great and the burden on the defendant is minimal.  *Wilson*, 518 F.3d at 42.

      Although expert testimony is not required in every case, it is "sometimes . . . necessary" to satisfy the plaintiff's burden on the reasonableness prong.  *Id.*  The plaintiff "cannot rest on a showing of mere inaccuracy" and must "minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures." *Stewart*, 734 F.2d at 51 (denying summary judgment because there were genuine issues of material fact regarding whether the agency followed reasonable procedures to ensure the accuracy of the report and whether the inaccuracy caused the denial of consumer membership). But in certain circumstances, inaccurate credit reports themselves may be sufficient to demonstrate the unreasonableness of a reporting agency's procedures and the absence of direct evidence may not always be fatal to a plaintiff's claim.  *Id.* at 52.

### C.  The Court Denies the Defendant's Motion for Summary Judgment

The plaintiff alleges that the defendant violated the FCRA by negligently failing to follow reasonable procedures, completing the investigative report late and using the term "pending" in the plaintiff's background report in a confusing and unreasonable manner.  Compl. ¶¶ 24, 29; Pl.'s Opp'n at 10-11.  The defendant moves for summary judgment, contending that the plaintiff has failed to establish a prima facie case of negligence under the FCRA.  Def.'s Mot. at 4-8.  The plaintiff opposes the motion, claiming that a reasonable jury could conclude that each of the four prongs has been satisfied.  *See generally* Pl.'s Opp'n.  For the reasons discussed below, the court concludes that the defendant is not entitled to summary judgment.

### 1.  The Plaintiff Has Created a Triable Issue of Material Fact as to Whether the Report Was Inaccurate or Misleading

Under the first prong of the FCRA, the plaintiff must show that the report was either inaccurate or that it was misleading to potential readers.  *Koropoulos*, 734 F.2d at 40.  The defendant argues that the plaintiff has failed to demonstrate that the criminal history portion of the background report contained inaccurate information or information that was accurate but misleading.  Def.'s Mot. at 18.  The defendant asserts that the word "pending" meant simply that the defendant's background investigation had not yet been completed.  *Id.*  To support this contention, it offers expert testimony of a CARCO employee as evidence that the term "pending" is an industry term that had been used in over 120,000 prior transmissions to Prudential and therefore was not misleading.  *Id.*

The plaintiff does not dispute that the information in the report was technically accurate, but instead avers that the use of the term "pending" was misleading.  Pl.'s Opp'n at 27-28.  In support of his claim, the plaintiff first points to the background report itself, alleging that the

word "pending" could imply that criminal charges were pending against him.  Pl.'s Opp'n at 6, 19-23.  The plaintiff buttresses this allegation with his own deposition testimony, in which he recounts statements purportedly made to him by a Prudential employee and a CARCO employee. *Id.* at 19-23.  The first statements were allegedly made by Prudential employee Fontanetta in a series of conversations with the plaintiff, in which Fontanetta suggested that the background report indicated that there were charges pending against the plaintiff in Oklahoma.  *Id.* at 20-21.  The plaintiff avers that the second statement was made by CARCO employee Hefferman to him, in which Hefferman suggested that the report showed that there were criminal charges pending against the plaintiff.  *Id.* at 20.

To defeat summary judgment on his claim, the plaintiff must present evidence from which a reasonable jury could infer that his background report was factually correct but nonetheless misleading.  *Koropoulos*, 734 F.2d at 40; *see also Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991).  The plaintiff is not required to produce evidence in a form that would be admissible at trial; but the evidence must be capable of being converted into admissible evidence.  *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369-70 (D.C. Cir. 2000) (citing FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324).

The plaintiff's deposition testimony contains two statements in support of his position. First, the plaintiff stated that Prudential employee Fontanetta had told him "there were charges pending against [him] or . . . [there were] charges in the State of Oklahoma." *Id.*; Def.'s Mot., Ex. 9 ("Wilson Dep.") at 41-42.  Contrary to the defendant's assertions, Def.'s Mot. at 9-10, the plaintiff's account of Fontanetta's statements would be admissible at trial because the statements were adopted by the plaintiff's party-opponent – the defendant – in related litigation between the

defendant and Prudential, *see* Pl.'s Opp'n at 20-21, Ex. 25 (noting that the defendant alleged that "Prudential informed [the plaintiff] . . . that it was withdrawing the offer *because criminal charges were pending against him in Oklahoma*"); FED. R. EVID. 801(d)(2)(B) (stating that a "statement is not hearsay if . . . [it] is offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth").   Because the plaintiff's evidence of Fontanetta's statements is reducible to admissible evidence at trial, the plaintiff can rely on it to raise a genuine issue of material fact.  *Gleklen*, 199 F.3d at 1369-70.

The plaintiff's deposition testimony also describes a conversation he had with Hefferman concerning his background report.  Wilson Dep. at 48.  This statement is admissible because it is a statement of an employee of the defendant, made during the course of her employment and offered against the defendant.  FED. R. EVID. 801(d)(2)(D) (stating that a "statement is not hearsay if . . . [it] is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship").  Although it is difficult to ascertain from the plaintiff's deposition testimony what specifically Hefferman purportedly said to the plaintiff, *see* Wilson Dep. at 48 (stating that although he did not remember the conversation verbatim, he recalled that Hefferman "pretty much . . . had advised . . . that there was nothing that she could do and basically to [her he was] guilty until proven innocent . . . .  [He had] charges against [him] . . . until [CARCO could] prove that they [were] not [his]"), taken together, the statements of Fontanetta and Hefferman create a triable issue of material fact as to whether the term "pending" in the background report was misleading to Prudential employees.  *Koropoulos*, 734 F.2d at 37-38; *Stewart*, 734 F.2d at 52.

### 2. The Plaintiff Has Created a Triable Issue of Material Fact as to
### Whether the Defendant Utilized Reasonable Procedures

The defendant asserts the plaintiff has failed to present any evidence from which a jury could infer that the defendant failed to follow reasonable procedures in preparing the plaintiff's background report.  Def.'s Mot. at 13-16.  The defendant claims the plaintiff can only overcome summary judgment on this prong by offering expert testimony, which he has failed to do.  *Id.*  The plaintiff disputes this contention, pointing out that an inaccurate report itself can serve as evidence of unreasonable procedures.  Pl.'s Opp'n at 23-24.  The plaintiff claims that because the defendant "could have averted the potential harm" to the plaintiff by simply explaining more clearly that "pending" referred to the status of the background investigation rather than to a pending criminal charge, a reasonable jury could determine that the defendant failed to use reasonable procedures.  *Id.* at 24-26.

In determining whether the defendant utilized procedures that were reasonably prudent under the circumstances, the court must balance the potential that the information as provided may be misleading against the burden on the defendant to provide clarification when more accurate or complete information was available.  *Stewart*, 734 F.2d at 51.  The determination of the reasonableness of the defendant's procedures involves a balancing test: courts must "weigh the potential that the information will create a misleading impression against the availability of more accurate or complete information and the burden of providing such information."  *Koropoulos*, 734 F.2d at 42.  The more misleading the information – in other words, the greater the harm it can cause the plaintiff – and the more easily available the clarifying information, the greater the burden upon the consumer reporting agency to prove why they failed to provide this clarification.  *Id.*

Here, the plaintiff stood to suffer grave stigmatic harm if his criminal background report contained inaccurate or misleading information; conversely, the defendant could easily have clarified its background report by noting that "pending" meant that completion of the report was pending, not that criminal charges were pending.  Therefore, the defendant had a heavy obligation under the FCRA to provide an accurate and complete criminal background report. *Wilson*, 518 F.3d at 42.  With this standard in mind, the court recounts the underlying facts of the case as articulated by the Circuit, viewed in the light most favorable to the plaintiff.  Prudential retained the defendant on August 1, 2002 to complete the plaintiff's background report.

> By August 9, the [defendant's] scattershot approach yielded thirteen "hits," each apparently corresponding to an individual.  Four days later, [the subcontractor that the defendant retained to assist with the investigation] sent [the defendant] thirteen "I.D. pages" with a note saying it was "at a loss."  [The defendant] then told [the plaintiff] he had criminal charges in Oklahoma – an allegation [the plaintiff] denied.  Almost three weeks after being retained, [the subcontractor] faxed [the defendant] information on thirteen individuals, six of whom couldn't have been [the plaintiff], because their names, birthdates, and/or races differed from his . . . .

*Id.* at 41.

The defendant then submitted the plaintiff's background report to Prudential, which read as follows: "'[a] criminal record search for convictions and arrests, where prosecution is pending, was [initiated] . . . on the subject as follows.'  Below this statement, a chart listed 'Pending' next to the Oklahoma entry for 'Wilson, Derek.'"  *Id.*

> [After] Prudential withdrew its offer, [the plaintiff] began his own investigation . . . [and] sent [the defendant] a letter detailing the results of his investigation.  On September 6, [the defendant] finally concluded [the plaintiff] had no criminal history in Oklahoma . . . .  By the time the dust settled, [the defendant] had taken 36 days to complete its task.  In contrast, [the plaintiff's] own investigation took ten minutes, spread across 2-3 days.

*Id.* Based on this scenario, the court concludes that the plaintiff has created a triable issue of material fact with respect to whether the defendant's procedures – both in its performance of the background investigation and in its use of the word "pending" in the report – were reasonably prudent under the circumstances. *See Stewart*, 734 F.2d at 49-52 (determining that the plaintiff properly defeated summary judgment by demonstrating that his credit report erroneously contained an unfavorable entry), 52 & n.7 (citing *Morris v. Credit Bureau, Inc.*, 563 F. Supp. 962 (S.D. Ohio 1983) (holding that the plaintiff prevailed by showing that the defendant credit bureau erroneously maintained two separate files for the plaintiff and, upon discovering an improper entry, corrected the mistake in only one of the two files)).

### 3.  The Plaintiff Has Created a Triable Issue of Material Fact as to Damages

Under the third prong of the FCRA analysis, the plaintiff must offer evidence from which a reasonable jury could determine that he suffered damages.  15 U.S.C. § 1681o(1); *Philbin*, 101 F.3d at 963.  The plaintiff alleges that he has suffered damages, submitting, *inter alia*, his employment offer from Prudential, which indicated an annual base salary of $45,000 plus benefits.  Pl.'s Opp'n at 28-33.  The defendant counters that the plaintiff's estimate of damages is speculative because his employment with Prudential would have been at-will.  Def.'s Mot. at 19-23.

The court concludes that the defendant misconstrues the plaintiff's burden: although the plaintiff may not satisfy the third prong by offering only rank speculation as to his damages, "it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result [is] only approximate." *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1235 (D.C. Cir. 1997).  The plaintiff has satisfied this burden by

providing evidence of the income he would have derived had Prudential employed him and by pointing out that there is no reason to believe he would not still be employed by Prudential today. *Barbour v. Merrill*, 48 F.3d 1270, 1280 (D.C. Cir. 1995) (rejecting the defendant's claim that the plaintiff's case for front pay was unduly speculative because the plaintiff provided both a proposed salary base and a definite duration for the award).

### 4. The Plaintiff Has Created a Triable Issue of Material Fact as to Causation

The fourth prong requires the plaintiff to establish a genuine issue of material fact as to whether the defendant's actions caused Prudential to rescind his employment offer. *See Philbin*, 101 F.3d at 963. The defendant again argues that Prudential withdrew the plaintiff's employment offer because it did not have a complete background report, not because it believed that there were criminal charges pending against him. Def.'s Mot. at 10. The defendant maintains that the plaintiff's deposition testimony regarding alleged statements made by Prudential employee Fontanetta and CARCO employee Hefferman are inadmissible and that in any case, the plaintiff fails to connect these statements to the rescission of his employment offer. *Id.* at 5-13. The plaintiff retorts that there is a genuine issue of material fact as to who decided to rescind his employment offer and why that decision was made. Pl.'s Opp'n at 12, 19-23.

To prevail on his FCRA claim, the plaintiff must demonstrate that the defendant's use of the misleading term caused Prudential to rescind his employment offer. *Philbin*, 101 F.3d at 963 (determining that without a causal relationship between the alleged violation of the FCRA and the injury, a plaintiff cannot establish actual damages). To support its claim that the plaintiff has failed to draw a sufficient causal nexus, the defendant offers the deposition testimony of Teresa Maloney, another Prudential employee, who stated that she had no knowledge of the contents of

14

the background report and that she alone decided to revoke the plaintiff's offer.  Def.'s Mot., Ex. 3. ("Maloney Dep.") at 24-28, 34-36.

The plaintiff counters with deposition testimony of Jeanette Mongiello, a Prudential employee, who testified that she and three other Prudential employees, including Fontanetta, all played a role in the decision to revoke the employment offer.  Pl.'s Opp'n, Ex. 6 ("Mongiello Dep.") at 42.  In addition, the plaintiff again points to the statements that Fontanetta purportedly made to him indicating that Prudential believed there were criminal charges pending against him.  Pl.'s Opp'n at 15; Wilson Dep. at 98-99.  Finally, the plaintiff offers documents that the defendant itself filed in the related lawsuit between the defendant and Prudential.  Pl.'s Opp'n at 13-14.  In those documents, the defendant stated that "Prudential informed [the plaintiff] orally and/or in writing that it was withdrawing the offer *because criminal charges were pending against him in Oklahoma*."  *Id.*, Ex. 25.

Based on the evidence that the plaintiff has proffered, the court determines that a reasonable jury could infer that the term "pending" in the plaintiff's background report caused Prudential to revoke his employment offer.  *Stewart*, 734 F.2d 54, 55 n.12 (determining that the plaintiff defeated the summary judgment motion, even in the absence of direct evidence of causation, by offering evidence that the agent saw a report that inaccurately indicated the plaintiff's financial delinquency before denying the plaintiff's membership application).  Because the plaintiff has established a genuine issue of material fact with respect to whether the defendant violated the FCRA, the court denies the defendant's motion for summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the defendant's motion for summary

judgment.  An Order consistent with this Memorandum Opinion is separately and

contemporaneously issued this 30th day of March, 2009.


RICARDO M. URBINA
United States District Judge